IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINCOLN T. GRISWOLD, individually, and LINCOLN T. GRISWOLD, as the former majority partner and owner of the Lincoln T. Griswold Family LLP,<br><br>Plaintiffs,<br><br>v.<br><br>COVENTRY FIRST LLC, THE COVENTRY GROUP, INC., MONTGOMERY CAPITAL, INC., COVENTRY FINANCIAL, LLC, and REID S. BUERGER,<br><br>Defendants. | Civil Action No. _____ |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453, Defendants Coventry First LLC, The Coventry Group, Inc., Montgomery Capital, Inc., Coventry Financial LLC, and Reid S. Buerger (collectively the "Defendants"), by and through their undersigned attorneys, remove to this Court the action described in paragraph 1 below.

### THE REMOVED CASE

1. The removed case is a putative nationwide class action filed on or about October 1, 2010, in the Court of Common Pleas, Montgomery County, Pennsylvania, styled *Lincoln T. Griswold et al. v. Coventry First LLC et al.*, Case No. 2010-29237-0 (the "Action"). The complaint was served on all Defendants, except Reid Buerger, on October 6, 2010.[1]

### PAPERS FROM REMOVED ACTION

2. As required by 28 U.S.C. § 1446(a), attached as Exhibit 1 hereto are copies of all process, pleadings, orders, and other papers served on Defendants in the Action.

---

[1] Reid Buerger has not been properly served. *See* Pa. R. Civ. P. 402. Although he consents to the removal of the Action, Mr. Buerger reserves all rights to challenge service of process.

## THE CONSENT REQUIREMENT IS SATISFIED

3. All Defendants join in this Notice of Removal, and thereby consent to removal, even though the Class Action Fairness Act of 2005 ("CAFA") eliminates the requirement that they do so. *See* 28 U.S.C. § 1453(b).

## VENUE

4. Venue in the Eastern District of Pennsylvania, Philadelphia Division, is proper under 28 U.S.C. § 1441(a) because this Court is the United States District Court for the district and division embracing the place where the state court action was pending.

## NOTICE TO ADVERSE PARTY AND STATE COURT

5. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiff,[2] and a copy is being filed with the Clerk of the Court for the Court of Common Pleas, Montgomery County, Pennsylvania. Attached as Exhibit 2 hereto is a copy of the "Notice of Filing Notice of Removal" along with the accompanying Certificate of Service, which Defendants will serve on Plaintiff and file in the state court.

## BASES FOR FEDERAL SUBJECT MATTER JURISDICTION

6. This Court has subject matter jurisdiction over this civil action under CAFA, 28 U.S.C. § 1332(d), because: (1) there is minimal diversity, *i.e.*, at least one member of the putative plaintiff class is a citizen of a State different from any defendant, *see* 28 U.S.C. § 1332(d)(2)(A); (2) the number of putative class members exceeds 100, *see* 28 U.S.C. § 1332(d)(5)(B); and (3) the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, *see* 28 U.S.C. § 1332(d)(2).

A. **There Is Minimal Diversity.**

7. Minimal diversity exists in this case because at least one putative class member is a citizen of a state different from any Defendant. Defendants are citizens of Pennsylvania or

---

[2] Although he purports to bring this action in two different capacities, Lincoln T. Griswold is the only plaintiff in this action. Consequently, Defendants refer to him in the singular.

2

both Pennsylvania and Delaware.[3] And, the putative class members identified in Plaintiff's complaint alone are citizens of at least Indiana, and almost certainly other states as set forth below.

### 1. Defendants Are Citizens of Pennsylvania or Pennsylvania and Delaware.

8. Defendant Montgomery Capital, Inc. ("Montgomery Capital") is a Delaware corporation with its principal place of business in Pennsylvania. *See* Plaintiff's Complaint ("Compl.") ¶ 17. Consequently, it is a citizen of both Delaware and Pennsylvania. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006) ("[A] corporation's citizenship derives, for diversity jurisdiction purposes, from its State of incorporation and principal place of business." (citing 28 U.S.C. § 1332(c)(1))).

9. Defendant The Coventry Group, Inc. ("The Coventry Group") is a Pennsylvania corporation with its principal place of business in Pennsylvania. *See* Compl. ¶ 16. Consequently, it is a citizen of Pennsylvania.

10. Defendant Coventry First LLC ("Coventry First") is a Delaware limited liability company. *See* Compl. ¶ 15. As a limited liability company, its citizenship is determined by that of its sole member, Montgomery Capital, Inc. *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) ("[T]he citizenship of an LLC is determined by the citizenship of its members."). Consequently, Coventry First is a citizen of Delaware and Pennsylvania.

11. Defendant Coventry Financial LLC ("Coventry Financial") is a Delaware limited liability company. *See* Compl. ¶ 18. Its sole member is Lifetime Assets Corporation, a

---

[3] Although some (but not all) of the Defendants are Delaware citizens, putative class members who are Delaware citizens satisfy the minimal diversity requirement because they are diverse from The Coventry Group, Inc., Coventry Financial LLC, and Reid Buerger, who are citizens of Pennsylvania only. *See* 28 U.S.C. § 1332(d)(2)(A) (minimal diversity exists where "any member of a class of plaintiffs is a citizen of a State different from *any* defendant") (emphasis added); *see also West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 445 (E.D. Pa. 2010) ("For CAFA's minimal diversity requirements to be met, only one member of the plaintiff class-named or unnamed-must be diverse from any one defendant.") (quotation and internal punctuation omitted).

Pennsylvania corporation with its principal place of business in Pennsylvania. *See* Declaration of Amy Welsh in Support of Notice of Removal ("Welsh Decl.") ¶ 2. Consequently, Coventry Financial is a citizen of Pennsylvania.

12. Defendant Reid Buerger is an individual domiciled in Pennsylvania. *See* Compl. ¶ 19. Consequently, Mr. Buerger is a citizen of Pennsylvania.

### 2. Putative Class Members Are Citizens of Other States.

13. This is a putative nationwide class action in which Plaintiff alleges misconduct by Coventry First in purchasing life insurance policies from sellers across the United States. Indeed, several facts independently confirm that the minimal diversity requirement is satisfied here. <u>First</u>, the Complaint identifies several transactions as "examples" of the misconduct alleged, and the policy seller in at least one of these transactions is a citizen of a state other than Pennsylvania. <u>Second</u>, Plaintiff expressly recognizes in his Complaint that the putative class includes non-Pennsylvania citizens. <u>Finally</u>, Coventry First has purchased more than 8,300 policies from sellers residing outside Pennsylvania. The near-impossibility that not one of these thousands of sellers is a citizen of a state other than Pennsylvania satisfies CAFA's minimal diversity requirement.

#### a. At Least One Policy Seller Identified in the Complaint Is a Citizen of a State Other Than Pennsylvania.

14. Plaintiff defines the putative class in this case to include:

All persons or entities who transferred a life insurance policy to Defendants within the last ten years of filing this action and (i) the gross offer was not disclosed by Defendants to the transferring party; or (ii) the policy sale was facilitated by a Broker who Defendants (sic) had entered into a right of last offer with Defendants; or (iii) the policy sale was facilitated by a Broker who Defendants during the transaction or had in the past paid deferred compensation and/or a bonus in addition to the other compensation paid by Coventry; or (iv) the policy sale was facilitated by a Broker who had an agreement with Defendants to not shop the offer; or (v) Defendants paid a co-Broker payment to an entity that was not directly facilitating the sale of the policy in order to have that party not bid on the subject policy; (vi) the policy sale was facilitated by a Broker who Defendants during the transaction or had in the past paid the Broker total compensation for the sale of a policy in excess of 50% of the gross offer or 6% of

4

the face value of the policy; or (vii) Defendants paid the Broker an amount in excess of the amount permitted by the agreement with the policy owner.

Compl. ¶ 166.

15. Plaintiff identifies several life settlement transactions that he claims are "examples" of the alleged practices at issue. Compl. ¶ 51; *see also id.* ¶ 95 (transactions discussed in complaint are "illustrative cases"); *id.* ¶¶ 52-75, 86-89, 91-94, 102-104 (discussing specific life settlement transactions). Thus, the "persons or entities who allegedly transferred" the life insurance policies (*i.e.*, the policy sellers) in those transactions are putative class members in this action. *Id.* ¶ 166. At least one of those policy sellers is a citizen of a state other than Pennsylvania.[4]

16. Paragraph 73 of the Complaint describes a policy seller who is claimed to be a putative class member in this case. In his Complaint, Plaintiff contends that the putative class includes policy sellers who sold policies to Coventry First in transactions that allegedly were "facilitated by a Broker who had an agreement with Defendants to not shop [Coventry First's] offer," and in which Coventry First allegedly "paid a co-Broker payment to an entity that was not directly facilitating the sale of the policy in order to have that party not bid on the subject policy." Compl. ¶ 166. Plaintiff claims the transaction described in paragraph 73 meets this description. *See id.* ¶ 73 (alleging Coventry First paid $19,000 co-broker payment "to the Broker who agreed not to bid on the policy"). The policy seller in the transaction described in paragraph 73 of the Complaint is an active Indiana corporation with its principal place of business in

---

[4] Almost all of the policy sellers in the "exemplar" transactions discussed in Plaintiff's complaint provided Coventry First with addresses outside Pennsylvania, making them residents of those states. For individuals, however, citizenship for diversity purposes depends on the person's domicile, as opposed to residence. A person's domicile is his "true, fixed and permanent home and place of habitation . . . to which, whenever he is absent, he has the intention of returning." *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006). To the extent minimal diversity is not established by the facts set forth in this Notice and the supporting Declaration of Amy Welsh (Defendants respectfully submit that it is), Defendants request leave to take appropriate discovery regarding the intent of these and/or other putative class members to remain in, or return to, their current residences.

Indiana. *See* Welsh Decl., Exs. A, B;[5] Ex. 3 to this Notice of Removal (certificate of good standing). Consequently, it is a citizen of Indiana.

17. Because this putative class member is a citizen of a state other than Pennsylvania, CAFA's minimal diversity requirement is satisfied. *See* 28 U.S.C. § 1332(d)(2)(A) (minimal diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant").

          **b.    Plaintiff Acknowledges That The Putative Class Includes Citizens of States Other Than Pennsylvania.**

18. Plaintiff makes no effort to limit the putative class to citizens of Pennsylvania. *See* Compl. ¶ 166. To the contrary, he claims Defendants engaged in the practices at issue in purchasing policies from sellers who were "citizens of New York State." *Id.* ¶ 109. Each of those sellers is a putative class member herein. *See id.* ¶ 166. Plaintiff elsewhere asserts that Coventry First continues to engage in the complained-of practices "in *all* other states" outside New York. Compl. ¶ 115 (emphasis added). Coventry First has purchased policies from sellers in all 50 states. *See* Welsh Decl. ¶ 5.

19. In Plaintiff's own transaction, for example, the policy seller was the Lincoln T. Griswold Irrevocable Trust. *See* Compl. ¶¶ 20, 149. A trust's citizenship, for diversity purposes, is based on the citizenship of its trustees and beneficiaries. *See Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 205 (3d Cir. 2007) ("[T]he citizenship of both the trustee and the beneficiary should control in determining the citizenship of a trust."). Plaintiff alleges that the trustee of the Lincoln T. Griswold Irrevocable Trust is Wells Fargo Bank, N.A. ("Wells

---

[5] To protect confidentiality, and because (1) pre-certification discovery of putative class members' identities is improper, and (2) a putative class member's citizenship does not depend on its name, Defendants have redacted from the exhibits to both the Welsh Declaration and this Notice of Removal information that would identify any policy seller. If the Court were to find the minimal diversity requirement to be a disputed issue—despite Plaintiff's allegations that the conduct at issue occurred in transactions with citizens of states other than Pennsylvania, *see infra* ¶ 18—Defendants would submit unredacted copies of these materials for the Court's *in camera* review. *See generally Cunningham Charter Corp. v. Learjet, Inc.*, No. 07-cv-233-DRH, 2008 WL 3823710, at **5-6 (S.D. Ill. Aug. 13, 2008) (*in camera* review of materials establishing jurisdictional facts under CAFA).

Fargo"). Compl. ¶ 21. As a national banking association, Wells Fargo's citizenship is based on the state in which it is "located," 28 U.S.C. § 1348, which means "the State designated in its articles of association as its main office." *Wachovia Bank*, 546 U.S. at 318. Wells Fargo's main office is in Sioux Falls, South Dakota, and thus it is considered a citizen of that state for diversity purposes. *See California ex rel. Bates v. Mortgage Elec. Registration Sys., Inc.*, No. 2:10-cv-01429-GEB-CMK, 2010 WL 2889061, at *1 (E.D. Cal. July 21, 2010) ("Wells Fargo's main office, as designated in its articles of association, is located in Sioux Falls, South Dakota. Accordingly, Wells Fargo is a citizen of South Dakota . . . . and 'Wells Fargo is not a citizen of California.'" (quoting *DeLeon v. Wells Fargo Bank, N.A.*, No. CV 10-01390 JF (HRL), 2010 WL 2382404, at *2 (N.D. Cal. June 9, 2010))).

20. Wells Fargo was also the trustee of the trust that sold the policy at issue in *Luber v. Bedrock Funding LLC*, Case No. 2010-00981 (Court of Common Pleas, Montgomery County, Pennsylvania), which Plaintiff holds out as another putative class member in this case. *See* Compl. at 3 n.4 (claiming *Luber* transaction is example of case in which Coventry First allegedly "misrepresent[ed] the amount and nature of fees paid and prices bid"); *id.* ¶ 166 (putative class includes policy sellers in whose transactions "the gross offer was not disclosed," and includes no carve out for sellers involved in other litigation).

21. Coventry First has purchased at least one other policy from a trust that had Wells Fargo Bank, N.A. as the trustee, *see* Welsh Decl. ¶ 7, which consequently is a citizen of South Dakota.[6]

---

[6] Although Plaintiff has defined the class to include only transactions tainted by misconduct, it is sufficient for jurisdictional purposes to identify the citizenship of the seller(s) of policies purchased by Coventry First. Not only does Plaintiff claim that the practices alleged were "pervasive," Compl. ¶¶ 1, 2, "frequent[]," *id.* ¶ 90, "a course of continuing conduct," *id.* ¶ 41, and amounting to a "policy and practice," *id.* ¶ 95, but Defendants are not required to choose between admitting liability (which, to be clear, they deny) and losing the federal forum to which they are entitled. *See Margulis v. Resort Rental, LLC*, No. 08-1719 (WJM), 2008 WL 2775494, at **4-5 (D.N.J. July 14, 2008) (where plaintiff defined class to include only non-consenting recipients of pre-recorded telephone calls, defendant established jurisdiction under CAFA by establishing number of telephone calls made, without regard to consent: "To require defendant to provide further information, e.g., whether the calls were placed to individuals who provided

22. Coventry First has also purchased at least one policy from a trust that had Bank of America, N.A. as the trustee, *see* Welsh Decl. ¶ 8, which consequently is a citizen of North Carolina. *See Delgado v. Bank of Am. Corp.*, No. 1:09cv01638 AWI DLB, 2009 WL 4163525, at *6 (E.D. Cal. Nov. 23, 2009) ("Bank of America, N.A. is a citizen of North Carolina, where its articles of association establish its main office.").

### c. Coventry First Has Purchased Thousands of Policies from Residents of States Other Than Pennsylvania.

23. Coventry First's sheer number of policy purchases from sellers residing outside Pennsylvania also demonstrates that minimal diversity exists in this case. During the class period defined in Plaintiff's complaint, Coventry First has purchased more than 8,700 policies with death benefits in excess of $23 billion from sellers residing in all 50 states plus Washington DC and Puerto Rico.[7] *See* Welsh Decl. ¶ 5. Of these, fewer than 5% of the policies were sold by Pennsylvania residents. *See id.* Coventry First purchased the remaining 8,300-plus policies, which represent more than $20 billion in death benefits, from sellers residing outside of Pennsylvania. *See id.*

24. Although residence is not equivalent to citizenship for diversity purposes, the

---

consent or were engaged in a business relationship, would require defendant to concede aspects of the claim against it. On the most fundamental level, the absence of consent and the absence of a business relationship are the facts generating liability under the TCPA. Under plaintiff's argument, defendant would be required to concede that it actually violated the TCPA in order to remove the case, which would prove plaintiff's case and leave to this Court the task of simply assessing damages. This is not proper. Defendant has established the existence of the necessary jurisdictional facts."); *see also Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) ("Countrywide did not have to confess liability in order to show that the controversy exceeds the threshold."); *Belsly v. Funmobile Games, Inc.*, No. 08 C 4170, 2008 WL 4696155, at *2 (N.D. Ill. Oct. 23, 2008) (holding, where putative class defined to consist of customers who paid unauthorized charges, defendants need not admit to such charges to establish CAFA jurisdiction: "Defendants cannot be required to admit to extensive unauthorized charges merely to avail themselves of their federal rights.").

[7] "'Residence' refers to a person's place of habitation or address." *Manley v. Maran*, No. 02-2504 (DRD), 2007 WL 951951, at *4 (D.N.J. Mar. 28, 2007) (citations omitted). Here, Defendants' allegations of residence are taken directly from the addresses provided by policy sellers during the course of their policy purchase transactions.

Court does not check its common sense at the door when evaluating minimal diversity, and may consider the fact that it is essentially impossible that not a single one of these policy sellers is a citizen of any state other than Pennsylvania. *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006) (defendant satisfied minimal diversity requirement where defendant was citizen of Texas and Delaware, and complaint alleged thousands of "New York customers" were class members, holding "it seems plain to us that [defendant] is able to meet its burden of showing there is a reasonable probability that at least one of these class members is a citizen of New York . . ."); *King v. Safeway, Inc.*, No. C-08-0999 MMC, 2008 WL 1808545, at *1 (N.D. Cal. Apr. 22, 2008) (where class defined to include only purchasers of product in California, defendant satisfied minimal diversity requirement by submitting evidence that defendant had many stores close to borders of other states: "[T]he Court finds . . . it is 'more likely than not' that the putative class includes at least one individual who is a citizen of a state other than California or Delaware, the states of which defendant is a citizen"); *Larsen v. Pioneer Hi-Bred Int'l, Inc.*, No. 4:06-cv-0077-JAJ, 2007 WL 3341698, at *5 (S.D. Iowa Nov. 9, 2007) ("[B]ased on the record and potential quantity of bags sold, it is almost certain that over a ten-year period an out-of-state citizen purchased [product in question] in Iowa or an Iowan purchased [product] and has since changed his or her domicile. Therefore, the court is satisfied that there is minimal diversity in this case."); *McMorris v. TJX Cos., Inc.*, 493 F. Supp. 2d 158, 164 (D. Mass. 2007) (minimal diversity requirement satisfied where defendant "sufficiently alleged a 'reasonable probability' that at least one member of the McMorris class is domiciled in a state other than . . . the two states in which [defendant] is domiciled." (quoting *Blockbuster*, 472 F.3d at 59)).[8]

25. Accordingly, at least one member of the plaintiff class is a citizen of a State different from any defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

---

[8] Such a conclusion is especially appropriate in the CAFA context, where courts do not undertake "substantial, burdensome discovery" of jurisdictional facts concerning unnamed class members. *Fluke v. Cashcall, Inc.*, No. 08-5776, 2009 WL 637461, at *3 (E.D. Pa. Mar. 10, 2009) (quoting Judiciary Committee Report on Class Action Fairness Act, S. Rep. No. 109-14, at 44 (1st Sess. 2005)).

B.  **There Are 100 or More Class Members.**

26.  In asserting that the numerosity requirement is satisfied in this case, Plaintiff states that he "reasonably estimates and believes that there are hundreds of persons in the Class." Compl. ¶ 169; *see also id.* ¶ 96 (claiming "[i]n more than 200 cases, the Broker received half or more of what the Seller received."). This obviously satisfies CAFA's requirement that there be at least 100 class members. *See* 28 U.S.C. § 1332(d)(5)(B); *see also Frederico v. Home Depot, Inc.*, 507 F.3d 188, 197, 199 (3d Cir. 2007) (accepting allegations in plaintiff's complaint as to number of putative class members); *Adighibe v. Clifton Telecard Alliance*, No. 07-cv-1250 (PGS), 2008 WL 940777, at *3 (D.N.J. Apr. 7, 2008) (allegation in complaint that "there are 'hundreds' of persons who are members of the class" satisfied 100 class member requirement).

C.  **The Aggregate Amount in Controversy Exceeds $5 Million.**

27.  Plaintiff's own allegations likewise confirm that CAFA's $5 million amount-in-controversy requirement is satisfied. In his Complaint, Plaintiff seeks damages "in a sum in excess of Fifty Thousand [dollars] ($50,000.00) . . . exclusive of interests costs and damages for pre-judgment delay." Compl. at 1; *see also id.* at 42, 43, 45, 46, 47, 48 (seeking damages "in excess of $50,000"). There is no allegation in the Complaint limiting damages to below CAFA's $5 million jurisdictional threshold.

28.  Where, as here, the plaintiff "has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," and the defendant asserts, based on the allegations in the plaintiff's complaint,[9] that more than that amount is in controversy, then the case must remain in federal court unless "it appears to a legal certainty that the plaintiff

---

[9] Although the party asserting federal jurisdiction must establish *disputed* jurisdictional facts by a preponderance of the evidence, this standard does not apply where a removing defendant relies on the facts alleged in the plaintiff's complaint to establish federal jurisdiction. *See Frederico*, 507 F.3d at 198 (because defendant's "argument for jurisdiction is based on allegations made initially by [the plaintiff] herself . . . the present posture of the case is one where the relevant facts are not expressly in dispute between the parties"); *Zanger v. Bank of Am., N.A.*, No. 10-2480 (RBK/KMW), 2010 WL 3910142, at *3 (D.N.J. Oct. 1, 2010) ("[B]ecause the party asserting federal jurisdiction relies on its opponent's factual allegations, the preponderance-of-the evidence standard is inapplicable.").

*cannot* recover the jurisdictional amount." *Frederico*, 507 F.3d at 197 (emphasis in original). Notably, Plaintiff would have the burden of so establishing.[10] *See id.* at 195 (in these circumstances, "the *challenger* to subject matter jurisdiction [must] prove, to a legal certainty, that the amount in controversy *could not exceed* the statutory threshold.") (emphases in original); *Margulis*, 2008 WL 2775494, at *3 (same).

29. In *Frederico*, as in this case, the named class representative sought, *inter alia*, compensatory damages, punitive damages, and attorneys' fees, each on a class-wide basis. 507 F.3d at 197. Each of these categories of damages is properly considered in assessing the amount in controversy. *See id.* at 199 (compensatory damages considered); *id.* (plaintiff "is seeking punitive damages, which we must consider when calculating the amount in controversy" (citing *Golden v. Golden*, 382 F.3d 348, 356 (3d Cir. 2004))); *id.* at 199 ("We must also consider attorney's fees."). In applying the "legal certainty" test, the Third Circuit added the compensatory damages sought by the named plaintiff ($287.14) and the maximum punitive damages allowable under state law ($1,435.70). The court then added an attorneys' fee of thirty percent of that combined compensatory and punitive damage amount ($516.85). *See* 507 F.3d at 198-99. In *Frederico*, these amounts totaled $2,239.69. *Id.* at 199. The Court of Appeals then divided the required $5 million by that total, and compared the resulting number of putative class members required to reach the $5 million threshold (2,233) by the number of class members alleged in the plaintiff's complaint ("tens of hundreds of thousands"). Because the class size estimated by the plaintiff exceeded that required to reach the $5 million threshold, the Third Circuit held: "[W]e are satisfied that the . . . legal certainty test is met: as it does not appear to a

---

[10] If Plaintiff were to successfully challenge the amount-in-controversy requirement, he would be judicially estopped from subsequently seeking an amount in excess of $5 million in this action. *See Morgan v. Gay*, 471 F.3d 469, 476-78 (3d Cir. 2006) ("[T]he plaintiffs in state court should not be permitted to ostensibly limit their damages to avoid federal court only to receive an award in excess of the federal amount in controversy requirement. The plaintiff has made her choice, and the plaintiffs in state court who choose not to opt out of the class must live with it."); *see also id.* at 477 n.9 ("We note the potential availability of judicial estoppel arguments by the defendants should the plaintiffs in the future change legal positions in an attempt to achieve an award in excess of $5 million.").

*legal certainty* that [the plaintiff] cannot recover the jurisdictional amount, the case need not be remanded . . . ." *Id.* (emphasis in original).

30. In this case, Plaintiff likewise seeks, *inter alia*, (1) compensatory damages of at least $61,000, *see* Compl. ¶ 218 ("Plaintiff has suffered monetary losses of more than $61,000."); *id.* ¶ 144 (claiming Coventry First "agreed to pay McGarrey . . . $61,000 in excess of what Coventry was specifically authorized by Mid-Atlantic to pay McGarrey"); (2) punitive damages, *see* Compl. ¶¶ 190, 197, 207, 214, 220, 226; and (3) attorneys' fees, *see* Compl. ¶ 226.

31. The first step under *Frederico* is to add the punitive damages sought by Plaintiff to his claimed $61,000 in compensatory damages. Although bound by the limits imposed by the Federal Due Process Clause on punitive damages, *see State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("[I]n practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."), Pennsylvania courts have upheld punitive damages that "represent[ed] a 10 to 1 ratio over the compensatory award." *Hollock v. Erie Ins. Exchange*, 842 A.2d 409, 421-22 (Pa. Super. Ct. 2004) (en banc). Assuming (1) this 10:1 ratio is the most that Pennsylvania courts would award (a limitation not expressed in *Hollock*); and (2) Plaintiff's claimed compensatory damages do not exceed $61,000 (a limitation not found in his complaint), this would limit Plaintiff to seeking $610,000 in punitive damages.

32. Under *Frederico*, the next step is to take the combined compensatory/punitive damages sought ($671,000) and add attorneys' fees of 30 percent. In this case, that fee would be $201,300. Thus, considering only the compensatory damages, punitive damages, and attorneys' fees sought by Plaintiff, the total amount he has placed "in controversy," "exclusive of interest and costs," is $872,300. 28 U.S.C. § 1332(d)(2).

33. "Finally, $5 million, the jurisdictional threshold, divided by the total amount of damages sought for [Plaintiff himself, $872,300], produces a requisite class size" of 6 policy sellers. *Frederico*, 507 F.3d at 199; *see also* Compl. ¶ 180 (claiming "[a]ll Class members have been damaged in the same fashion, by the same conduct"). This class size necessary to meet the

amount-in-controversy requirement is "well under" the "hundreds" of class members that appears in Plaintiff's Complaint and Defendants' Notice of Removal. *Id.* Consequently, "it does not appear to a *legal certainty* that [Plaintiff] cannot recover the jurisdictional amount, [and] the case need not be remanded . . . ." *Id.* (emphasis in original).[11]

34. This analysis, moreover, does not account for the fact that Plaintiff also seeks "[e]quitable relief including the disgorgement of profits." Compl. at 49. Coventry First's profits

---

[11] The Life Insurance Policy Purchase Agreement at issue in this case contains an arbitration clause. That clause states that "[t]he arbitrator shall not have the power to award punitive, exemplary, or consequential damages." Compl. Ex. D ¶ 8.8. Consequential damages include attorneys' fees. *See Kopacz v. Delaware River & Bay Auth.*, 248 Fed. App'x 319, 322 (3d Cir. 2007) ("[A]n employee may recover consequential damages, including lost wages, pain and suffering, and attorneys' fees and costs . . . ."); *United States v. Simmonds*, 235 F.3d 826, 833 (3d Cir. 2000) ("consequential damages, such as attorneys' fees, are not recoverable in restitution under [18 U.S.C.] § 3663(b)(1)"). To be clear, Defendants do not waive this provision or any other applicable limitation on Plaintiff's ability to recover damages or fees, nor do Defendants waive their right to arbitrate claims by Plaintiff or any unnamed member of the putative class. Nonetheless, because Plaintiff seeks punitive damages and attorneys' fees in his Complaint, such damages are "in controversy" in this case. *See Frederico*, 507 F.3d at 197 ("'In removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court.'" (quoting *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004))). As the Third Circuit has observed, "[t]he court should not consider in its jurisdictional inquiry the legal sufficiency of [the plaintiffs'] claims or whether the legal theory advanced by the plaintiffs is probably unsound; rather, a court can dismiss the case only if there is a legal certainty that the plaintiff cannot recover more than [the jurisdictional threshold]." *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997); *see also id.* ("Once a good faith pleading of the amount in controversy vests the district court with diversity jurisdiction, the court retains jurisdiction even if the plaintiff cannot ultimately prove all of the counts of the complaint or does not actually recover damages in excess of [the jurisdictional threshold]." (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938))). Indeed, the fact that a plaintiff seeks a recovery to which it is not entitled does not mean that amount is not "in controversy." To the contrary, the plaintiff's entitlement to that amount frequently *is* the controversy to be resolved in the case.

And, in any event, CAFA's amount-in-controversy requirement would be easily satisfied even if the Court were to disregard Plaintiff's claims for punitive damages and attorneys' fees. Dividing the jurisdictional minimum of $5 million by Plaintiff's claimed compensatory damages alone ($61,000) produces a "requisite class size" of 82 policy sellers. *Frederico*, 507 F.3d at 199. This is far below the "hundreds" of class members that Plaintiff alleges exist. *See* Compl. ¶ 169. Thus, even setting aside Plaintiff's claim for punitive damages, "it does not appear to a *legal certainty* that [Plaintiff] cannot recover the jurisdictional amount, the case need not be remanded . . . ." *Id.* (emphasis in original).

on life settlement transactions during the ten years prior to the filing of the above-captioned matter have exceeded $5 million. Welsh Decl. ¶ 6.

**D.     Removal Is Timely.**

35.     A notice of removal must be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b). In cases like this one, in which the complaint is filed before it is served, the thirty day removal period runs from the date of service. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) ("[A] named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." (quoting 28 U.S.C. § 1446(b))).

36.     In this case, the Montgomery County Sherriff served the Complaint on all Defendants—except Reid Buerger, who has not been properly served—on October 6, 2010. Defendants' Notice of Removal is timely because it is filed within 30 days of that event.

Respectfully submitted,

COZEN O'CONNOR

/s/

F. Warren Jacoby, Esquire (Pa. ID #10012)
Jennifer M. McHugh, Esquire (Pa. ID #66723)
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2154
Facsimile: (215) 701-2154

*Of counsel:*
**WILLIAMS & CONNOLLY LLP**
David A. Forkner
Kenneth J. Brown
Marcie R. Ziegler
Stephen D. Andrews
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
*Attorneys for Defendants*

Dated: November 4, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2010, I caused to be served a true and correct copy of the foregoing *Notice of Removal*, with the exhibits described therein, via United States First-Class Mail, postage prepaid, to:

R. Eric Kennedy
Daniel P. Goetz
Weisman, Kennedy & Berris, Co., L.P.A.
101 Prospect Ave. West
Suite 1600 Midland Building
Cleveland, Ohio 44115
(216) 781-1111
(216) 781-6747 (telecopy)

Christopher P. Thorman
Peter Hardin-Levine
Daniel P. Petrov
Mark Griffin
Thorman & Hardin-Levine, L.P.A.
The Bradley Building
1220 West Sixth Street, Suite 207
Cleveland, Ohio 44113
(216) 621-9767
(216) 621-3422 (telecopy)

Gerard M. McCabe
Paul J. Schoff
Schoff McCabe, P.C.
Mt. Airy Conference Center, Suite 201
7208 Germantown Avenue
Philadelphia, Pennsylvania 19119
(215) 320-7200
(215) 531-5562 (telecopy)

*Attorneys for Plaintiff*

_____
F. Warren Jacoby, Esquire