UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINCOLN T. GRISWOLD and : | |
| LINCOLN T. GRISWOLD FAMILY TRUST, : | |
| : | Civil Action |
| Plaintiffs, : | |
| : | No. 10-5964 |
| v. : | |
| : | |
| COVENTRY FIRST LLC, *et al.*, : | |
| : | |
| Defendants. : | |

## ORDER

AND NOW, this 27th day of February, 2013, upon consideration of Defendants' Motion to Dismiss[1] Amended Complaint or to Compel Individual Arbitration and Stay ("Motion") (Dkt.

---

[1] In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). Pursuant to the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ("All civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation omitted).

Plaintiffs allege the following facts in the Amended Complaint. Defendants engaged in "pervasive fraud" in the life settlements industry that victimized "thousands of policy owners." Am. Compl. ¶¶1-2. Defendants "undermined competition in the life settlements business through a variety of schemes, the most egregious of which involves rigged bids for insurance policies." *Id.* ¶ 74. As part of this scheme, Defendants entered into a series of "secret" agreements with life settlement professionals— including brokers and industry competitors--to manipulate the bidding process for life insurance policies, reduce and suppress competition, induce others to breach fiduciary duties to elderly clients, and ultimately reduce the net amount received by elderly clients in the life settlements process. *Id.* ¶¶ 8-15.

Much of the Complaint, and the crux of this Motion to Dismiss, focuses on a series of allegedly fraudulent activities relating to life insurance Policy No. BU1142534 (the "Griswold Policy").

Defendants allegedly misappropriated the $8,400,000 Griswold Policy through the many corrupt practices that comprise Defendants' business plan. *Id.* ¶ 1

Through a series of transactions (the "Bedrock Transaction"), insurance advisor Kevin McGarrey secured the Griswold Policy for which "ultimately the primary economic benefit . . . was to be received by [Plaintiff] Lincoln Griswold." *Id.* ¶¶ 147-52. As part of the Bedrock Transaction, the Griswold Policy would be owned by a Trust, and Georgia-based Lincoln T. Griswold Family LLP ("Griswold LLP") was the sole beneficiary of said irrevocable Trust. Lincoln T. Griswold is the Manager and 99% owner of Griswold LLP. Additionally, the Bedrock Transaction included an Appointment Agreement and accompanying documents, which would govern any future life settlement sale. The Appointment Agreement disclosed to Defendant the existence of a fiduciary agreement between Mid-Atlantic, McGarrey (Mid-Atlantic's agent), the Trust, and Lincoln T. Griswold. The Appointment Agreement also required that Plaintiffs execute a secondary broker agreement before any commissions were paid to McGarrey. The secondary broker agreement (which Lincoln T. Griswold ultimately never executed) included a commission schedule that required Mid-Atlantic shall negotiate a commission amount with each designated broker not to exceed "4% of the face value of the policy." *Id.* ¶¶ 153-63. As part of the transaction that ultimately transferred ownership of the Griswold Policy to Defendant Coventry, Coventry paid McGarrey (Mid-Atlantic's broker) $145,000—$61,000 in excess of the $84,000 that Mid-Atlantic authorized McGarrey be paid. *Id.* ¶¶ 178-79. Coventry knew that it was limited to paying McGarrey $84,000 and that the secondary broker agreement remained unexecuted. Coventry "knew that Mid-Atlantic, Bedrock and McGarrey were breaching their fiduciary duties to Lincoln Griswold and the Trust[]" and "also knew that it was not providing full disclosure in disclosure statements that Coventry required Lincoln Griswold and Jean Griswold execute." *Id.* ¶¶ 185-86. Full disclosure would have endangered the transaction of the Griswold Policy and disclosed fiduciary breaches to Plaintiffs and that these actions are consistent with Defendants fraudulent business plan and practices. *Id.* ¶¶ 187-90.

Defendants now move to dismiss Plaintiffs' claims arguing that 1) Plaintiffs lack standing; 2) even if Plaintiffs had standing, the arbitration clause in the Purchase Agreement signed by the Trust binds Plaintiffs to arbitrate their claims against defendants on an individual—not classwide—basis and stay or dismiss the matter in all other respects; 3) Plaintiffs fail to state a RICO claim; and 4) Plaintiffs failed to state a Sherman Act Claim.

Plaintiffs have standing. "Generally all authorities agree that trust beneficiaries have a property right in the trust *res* . . . [accordingly] such an interest is sufficient to confer Article III standing." *Zavolta v. Lord, Abbett & Co. LLC*, 2010 WL 686546 *5 (D.N.J. Feb. 24, 2010) (citing *W.R. Huff Asset Mgmt. v. Deloitte & Touche LLP,* 549 F.3d 100, 106 (2d Cir. 2008)). Plaintiffs submitted an affidavit stating that the Trust has terminated, and thus the trust *res* (this chose in action) passed to the beneficiary of the Trust, Griswold LLP. After receiving the trust *res*, Griswold LLP began the wind up process during which Lincoln T. Griswold (the 99% owner of the trust) discovered the alleged wrongful conduct that forms the basis of this case. Because Lincoln T. Griswold possesses a proprietary interest in the property of the Griswold LLP that was injured, both Lincoln T. Griswold and the LLP have Article III standing to pursue claims against Defendants. *See id.* Additionally, Lincoln T. Griswold, as a signatory to the Appointment Agreement also has standing to pursue the claims in his individual capacity for harm caused by Defendants' alleged conduct.

Defendants' request to compel arbitration is denied. The arbitration provision at issue is unenforceable as to Plaintiffs who are non-signatories. *Devon Robotics v. Deviedma,* 2009 WL 4362822 (E.D. Pa. Nov. 30, 2009) (citing *Miron v. BDO Seidman*, *LLP,* 342 F. Supp. 2d 324 (E.D. Pa. 2004)). Additionally, Plaintiffs' claims are based largely upon the alleged fraudulent activities by the defendant— claims that would exist "even if the contract containing the arbitration clause were void." *See id.* at *5 ("[P]laintiff's actual dependence on the underlying contract in making out the claim against the

No. 30), the Responses thereto (Dkt. Nos. 33, 38, and 49), and the parties' arguments made during the June 16, 2011 hearing before this Court, it is hereby ORDERED that said Motion is DENIED. The parties are directed to file a joint status report with the Court within 30 days of this Order.

BY THE COURT:

/s/ C. Darnell Jones, II

---

C. Darnell Jones, II    J.

---

nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel.") (citations omitted). Because the complained-of harms—the alleged fraud—are independent of the Purchase Agreement at issue, arbitration cannot be compelled as to Plaintiffs. *Id.*

Defendants have moved to dismiss Plaintiffs RICO claim on the grounds that Plaintiffs have not sufficiently pled a cause of action. Construing the Amended Complaint in a light most favorable to Plaintiffs, and assuming all facts in the Complaint as true, the Court finds that Plaintiffs pled sufficient facts to comply with Rule 9(b), and to establish the commission of mail and wire fraud and a "pattern" of racketeering activity within the meaning of RICO, 18 U.S.C.§§ 1961(1), (5). It is also clear that more particularized information about the fraud will be borne out during the discovery process, as that information is "peculiarly within the defendant's knowledge or contro1." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (citing *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir. 1987)).

Plaintiffs' Complaint is pled sufficiently to confer standing to the plaintiffs with respect to the antitrust claims. Discovery will shed more light on the factual allegations regarding injury and other threshold issues. The Third Circuit has discouraged dismissal of antitrust claims at the pleading stage *See Brader v. Allegheny Gen. Hosp.,* 64 F.3d 869, 876 (3d Cir.1995). Indeed, the United States Supreme Court has held that "[i]n antitrust cases, where 'the proof is largely  the hands of the alleged conspirators,' dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746 (1976) (citations omitted). Applying this rigorous standard, and in light of Plaintiffs' well-pled Amended Complaint, dismissal of this count is denied.