**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LINCOLN T. GRISWOLD, and | : | |
| LINCOLN T. GRISWOLD FAMILY LLP, | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | NO. 10-5964 |
| COVENTRY FIRST LLC, THE | : | |
| COVENTRY GROUP, INC., | : | |
| MONTGOMERY CAPITAL, INC., | : | |
| COVENTRY FINANCIAL, LLC, and | : | |
| REID S. BUERGER, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                    February 18, 2015

Currently pending before the Court is the Motion by Defendants Coventry First LLC, The

Coventry Group, Inc., Montgomery Capital, Inc., Coventry Financial, LLC, and Reid S. Buerger

to Strike Plaintiffs' Class Action Allegations from the First Amended Complaint.  For the

following reasons, the Motion is denied.

## I.      FACTUAL BACKGROUND

### A.      <u>Facts Underlying the Substantive Lawsuit</u>

The crux of this case involves Plaintiff Lincoln T. Griswold's purchase of a life insurance

policy that was later sold to Defendant Coventry First LLC ("Coventry") at a purportedly inflated

price that included kickbacks to the broker.  The facts, as concisely summarized by the United

States Court of Appeals for the Third Circuit, are as follows:

In January 2006, Griswold purchased an $8.4 million life insurance policy. He then established the Lincoln T. Griswold Irrevocable Trust (the Trust) under Georgia law for the "sole and exclusive purpose" of owning the policy and he disclaimed any personal "right, title or interest in or power, privilege or incident of ownership" in the trust property. He appointed Wells Fargo Bank to serve as Trustee.

Two weeks after the Trust was formed, Griswold named Griswold LLP . . . as its sole beneficiary. . . . According to the terms of the partnership agreement, Griswold LLP would dissolve once it fulfilled its limited purpose of receiving the proceeds of the life insurance policy. At that point, it would enter into a "winding-up period," during which the trustee was tasked with "liquidating its property, satisfying the claims of its creditors, and distributing any remaining property or the proceeds therefrom to the Partners." Upon completion of the winding up period, the liquidating trustee would file a "Cancellation of the Election to Become a Limited Liability Partnership" to terminate the partnership.

In January 2006, the Trust appointed Mid-Atlantic Financial as its exclusive agent to "identify, select and appoint" a life-settlement broker who would help the Trust sell Griswold's life insurance policy. MidAtlantic selected Kevin McGarrey, who had previously assisted Griswold in procuring the policy, to be the settlement broker. In March 2008, McGarrey reached out to Appellant Coventry First LLC (Coventry), a Pennsylvania-based insurer and significant player in the life settlement industry, indicating that Griswold's life insurance policy was for sale and that Mid-Atlantic had authorized him to broker a life settlement for a commission of $84,000. In his complaint, Griswold alleges that Coventry rigged the bidding process by having McGarrey sign a written producer agreement—the "Secret McGarrey Agreement"—promising to refrain from seeking any further bids and to report any competing offers and their material terms to Coventry. In exchange, Coventry allegedly allowed McGarrey to "self-determine" his commission to the tune of $145,000, which was $61,000 more than what he was entitled to. Accordingly, McGarrey did not put the policy on the competitive market and did not pursue any other potential buyers.

Coventry offered $1.675 million for the Griswold policy—$1.53 million for the policy and $145,000 for McGarrey's commission. Coventry and McGarrey did not disclose the amount of broker compensation to the Trust or to Griswold. . . . On March 31, 2008, the Trust sold its policy to Coventry without having received a competing offer. The written purchase agreement contained the following arbitration clause:

> All disputes and controversies of every kind and nature between the Parties arising out of or in connection with this Agreement including, but not limited to, its existence, construction, validity, interpretation

2

> or meaning, performance, non-performance, enforcement, operation, breach, continuance, or termination thereof shall be submitted and settled by arbitration in accordance with the rules of the American Arbitration Association.
>
> Once Coventry acquired the life insurance policy, the Trust dissolved, having fulfilled its sole purpose. The Trustee, Wells Fargo, then transferred the proceeds of the sale to Griswold LLP, the sole beneficiary. In December 2008, the partners of Griswold LLP filed a "Cancellation of Limited Liability Partnership Election" in Georgia state court pursuant to the LLP's partnership agreement.

Griswold v. Coventry First LLC, 762 F.3d 264, 266–68 (3d Cir. 2014) (footnotes omitted) (citations to the record omitted).

### B.    Procedural History at the District Court Level

In September 2010, Griswold, both in his individual capacity and as the former majority partner of Griswold LLP, sued Coventry, Coventry Group, Montgomery Capital, Coventry Financial, and Reid S. Buerger, Coventry's Executive Vice President (collectively, "Defendants"), in Pennsylvania state court. He asserted claims of constituted common law fraud, fraudulent concealment, conversion, aiding and abetting the breach of fiduciary duties, and unjust enrichment, as well as violations of state life settlement acts, the Sherman Act, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). While the Amended Complaint focused on Plaintiff Griswold's policy ("Griswold policy"), it also asserted, on behalf of a putative class, that Defendants implemented various fraudulent and pervasive business schemes in order to acquire life insurance policies through rigged bids where Defendants entered into "secret" agreements with life settlement professionals to manipulate the bidding process for life insurance policies, eliminate competition, induce others to breach fiduciary duties to elderly clients, and reduce the net amount received by elderly clients in the life settlement process. (Am. Compl. ¶¶ 8–15, 74.)

3

These schemes purportedly victimized "thousands of policy owners."  (Id. ¶¶ 1–2.)

Defendants successfully removed the case to this Court, where it was assigned to the Honorable C. Darnell Jones, II.  Defendants then moved to dismiss for lack of standing because the purchase agreement had not been signed by Griswold, but rather by the Griswold Trust, which had dissolved.  In response, Griswold filed an "Election to Revive and Reinstate and Otherwise Become a Limited Liability Partnership," as well as an Amended Complaint adding Griswold LLP as a Plaintiff.  Defendants subsequently moved to dismiss the Amended Complaint alleging that: (1) Plaintiffs lack standing; (2) the arbitration clause in the Purchase Agreement signed by the Griswold Trust binds Plaintiffs to arbitrate their claims against Defendants on an individual, not classwide, basis; (3) Plaintiffs fail to state a RICO claim; and (4) Plaintiffs fail to state a Sherman Act claim.  The District Court denied Defendants' motion in its entirety.  As to the standing issue, the District Court determined that "[b]ecause Lincoln T. Griswold possesses a proprietary interest in the property of the Griswold LLP that was injured, both Lincoln T. Griswold and the LLP have Article III standing to pursue claims against Defendants. . . . Additionally, Lincoln T. Griswold, as a signatory to the Appointment Agreement also has standing to pursue the claims in his individual capacity for harm caused by Defendants' alleged conduct."  (Order, Griswold v. Coventry, No. Civ.A.10-5964 (E.D. Pa. Feb. 27, 2013).) As to the arbitration issue, the District Court determined that the arbitration provision was unenforceable as to Plaintiffs who were non-signatories to the Purchase Agreement. Additionally, Plaintiffs' claims were based largely upon the alleged fraudulent activities by the Defendant—claims that would exist even assuming the underlying contract was void.  (Id.)

C.     **Appeal to the Third Circuit**

Coventry filed an interlocutory appeal of this decision pursuant to the Federal Arbitration

Act, 9 U.S.C. § 16(a)(1),[1] alleging that (1) Plaintiffs lack standing to pursue this case; and (2)

Plaintiffs are required arbitrate all of their claims.   As a subsection of their standing argument,

Defendants asserted that even if Plaintiffs could establish standing to bring the asserted claims on

an individual basis, they plainly lacked standing to assert claims on behalf of a putative class

because the Plaintiffs were not members of the purported class.   As a subsection of their

arbitration argument, Defendants asserted that, should the court hold that Plaintiffs have standing

but must arbitrate their claims, it should clarify that Plaintiffs are required to arbitrate their

claims on an individual, not class, basis.   Specifically, they contended that, "[a]lthough the

district court did not reach this issue in light of its decision not to compel arbitration, defendants

fully briefed the issue below . . . and plaintiffs did not contest it, thereby forfeiting any argument

that class arbitration is appropriate."  (Pls.' Resp. Opp'n Mot. to Strike, Ex. 3, at 56.)

In response, Plaintiff did not address the class-based issues, but for a short footnote at the

end of their brief.  Specifically, footnote 129 of the Appellee Brief stated:

> Defendants assert that Plaintiffs fail to satisfy the FAC's class definition.   The
> method to attack the class definition is a Rule 12(f) motion which authorizes a court
> to strike "from any pleading any insufficient defense or any redundant, impertinent,
> or scandalous matter."  See Sanders v. Appel, Inc., 672 F. Supp. 2d 978, 990 (N.D.
> Cal. 2009).  Courts rarely strike class allegations because a class definition is refined
> through the pleading/discovery stages. "Dismissal of class allegations at the pleading
> stage should be done rarely and that the better course is to deny such a motion
> because 'the shape and form of a class action evolves only through the process of

---

[1]  The Federal Arbitration Act has provisions permitting an appeal from an order that,
*inter alia*, denies a petition under the Act to order arbitration to proceed or denies an application
to compel arbitration.  Cofab, Inc. v. Phila. Joint Bd., Amalgamated Clothing & Textile Workers,
141 F.3d 105, 109 (3d Cir. 1998) (citing 9 U.S.C. § 16(a)(1)).

discovery.'"  See Myers v. MedQuist, Inc., 2006 WL 3751210 at *4 (D.N.J.); Abdallah v. Coca-Cola Co., 1999 WL 527835 (N.D. Ga. [July 16, 1999]); 7AA Charles Alan Wright, Arthur Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Civil § 1785.3 (3rd ed. 2005) (overwhelming majority of class actions resolve class certification only after discovery period); In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d 609 (N.D. Cal. 2007).  See also Osgood v. Harrah's Entm't, Inc., 202 F.R.D. 115, 120–21 (D.N.J. 2001) ("Though there is no additional standing requirement for the plaintiff who seeks to represent a class, a proper class action requires a similarity of claims between the named plaintiffs and the class members.  This similarity of claims is tested not by principles of standing, but by the application of the Rule 23(a)(3) criteria.  If a class action is proper, then by definition the class representative's claims will be typical of the class.  Thus the class plaintiff's individual standing, linked to his or her asserted claim, becomes automatically linked to the class claim.  Having standing which a class representative shares with the members of a class is another way of saying that the class representative is a proper party to raise a particular issue common to the class. . . . [A] plaintiff who meets individual standing requirements possesses [standing] in the constitutional sense, and whether the plaintiff may represent the rights of others depends on the application of Rule 23 tests in the case of a class action[.]").

(Defs.' Mot to Strike, Ex. C, at 57–58 n.129.)

Again, in its Reply Brief, Defendants asserted that Plaintiffs lacked standing to assert claims on behalf of a putative class because Plaintiffs do not qualify as members of the putative class.  In addition, Defendants repeated their argument that if the court found that arbitration was warranted, such arbitration should proceed on an individual, not class, basis.  (Pls.' Resp. Opp'n Mot. to Strike, Ex. 4.)

The case proceeded to oral argument before the Third Circuit with Defendants asserting, in their opening statement, both lack of standing and mandatory arbitration.  Throughout the oral argument, issues of class suitability were raised.  In particular, the following exchanges occurred:

JUDGE HARDIMAN: . . . You referred to the brokers in the plural, in — generically. I mean, that's — as I read this, this is not a class action anymore.  It might have been at one time, but this is not any longer.  This is a dispute between these plaintiffs and these defendants, is it not?

6

MR. MANN [Counsel for Plaintiffs]: I guess what I would say is that remains to be seen.  As you know, it's very hard, very hard these days to get a class action certified.  We have not — no one has undertaken to have any discovery to suggest whether the allegations about this is a pattern of class-wide conduct are supportable.  There are a lot of hurdles to go.

All that's at issue today is not whether there's a class.  It's the issue whether the entire complaint can be dismissed.

JUDGE HARDIMAN: No, but what is at issue is whether that issue was forfeited.  And opposing counsel has argued that you didn't meet that challenge in the District Court, and I don't see anything to undermine that argument.  So where — what do you have there to counter that argument?

MR. MANN: I don't believe that we responded on that basis.  I think our principle response was that this case is not subject to arbitration at all.  I don't think we addressed the need to whether this should be class or individual arbitration because we believed then, as we believe now, that we have strong arguments why it's not arbitrable. . . .

. . . And so, the first question here is did these people agree to arbitrate?

JUDGE GREENAWAY: And if we find that they did, then from your standpoint, the issue of individual versus class arbitration should be resolved by the arbitrator?

MR. MANN: If you find that these individuals agreed to arbitrate, you still have to get over the hurdle of whether or not the particular disputed issue here is disputed subject to the — within the scope of the clause which we think, for the reasons I have debated with Judge Ambro sometime is at least a difficult question, if not one that's clearly in our favor.

But if you get through all that, then the case is never going to be sent to an arbitrator.  Our position on the class litigation is, we haven't yet decided whether there's going to be a case.  And if there's a case, then we can figure out if it's going to be an individual case or a class case.

JUDGE HARDIMAN: Well, but I'm not sure how we can just — we can postpone that decision, because part of the dispute here involves who the actual parties are, who were the parties to the agreement, and who were the parties to this litigation.  And my understanding is that neither Griswold, LLP, nor Mr. Griswold owned the policy when it was transferred to Coventry correct?

MR. MANN: That's correct.

JUDGE HARDIMAN: So, how could they possibly have standing to act on behalf

of a class of such transferors?

MR. MANN:  Well, if their claim is that the harm was to the market and to the people that were trying to transfer policies, obviously Mr. Griswold and the partnership were in that marketplace. . . .

 JUDGE AMBRO:  . . . Does your answering brief respond to the — your opponent's argument that assuming — even if they have standing and you must arbitrate, that you can only do so on an individualized basis not on a class basis?

MR. MANN: Not in great detail.  I mean, I think in our view that's an issue either resolved by the —

JUDGE AMBRO: Is — I think their reply brief argues not in any detail.

MR. MANN: Well, I think that that's an issue to be resolved if — go back and tell the Judge he has to order arbitration.  The Judge can decide that at that time, if not, the arbitrator can decide.  But my view is that should be taken up by the District Judge —

JUDGE AMBRO: But —

MR. MANN:  — to decide first who should decide it.

JUDGE AMBRO: Here's my problem.  They put that issue before us as one of the issues on appeal.  They briefed that issue.  I don't see it—a response in the answering brief to that issue, even if it's the point you're now making.

MR. MANN: I think that's a fair assessment of the brief.

JUDGE AMBRO: Okay, why don't you make your final point then?

MR. MANN: Okay, I do think that issue was not litigated in the District Court.

. . .

MR. SHANMUGAN [Counsel for Defendants]: . . . I would respectfully submit that it could not be clearer that any argument that plaintiffs are entitled to arbitrate on a class-wide basis has been forfeited.  We addressed the issue of class arbitration at length before the District Court and we cite the relevant pages in our opening brief. And of course, as Judge Ambro pointed out, we addressed that issue at length before this Court as well.

          And, nevertheless, plaintiffs offer no response, none, in their brief, on the

issue of whether class arbitration is appropriate here.  And I would respectfully submit that that is for good reason, because this is not simply a circumstance in which there is nothing in the arbitration provision that suggests a willingness to arbitrate on a class[wide] basis.  As we note in our brief, both sides to the purchase agreement, both the trustee, Wells Fargo, who has not attempted to commence any litigation, but nevertheless submitted a declaration in this case, and Coventry submitted declarations, both of which assert that both of the parties did not agree to class arbitration and that the parties did not agree to have an arbitrator make that determination.

> And so, we would respectfully submit that even if this Court were minded to reach the merits of that issue, this is an easy case in which the arbitration provision, at most permits individual arbitration.

JUDGE AMBRO: And isn't that really the biggest thing that you're concerned about?

MR. SHANMUGAM: We're certainly very concerned about that because of the perils of class-wide arbitration.  And so, at a minimum, if this Court resolves this case in our favor on the arbitration issue, we think that this court should make clear that on remand, the District Court should compel arbitration on an individual basis.

> And again —

JUDGE HARDIMAN: And what if it stays in the Court?

MR. SHANMUGAM: And if the case stays in the Court, then presumably plaintiffs would seek class certification and, of course, we would oppose that and we would note at the outset that precisely because the trust is not before the Court, this is a case in which you don't even have a class member as the plaintiff.

> And so, we certainly would think that class certification would be inappropriate.

(Pls.' Resp. Opp'n Mot. to Strike, Ex. 5, at 43–44, 45–47, 59–60, 64–66.)

**D.**   **Third Circuit Decision**

On August 11, 2014, the Third Circuit issued a decision affirming the District Court's ruling in its entirety.  Griswold v. Coventry, 762 F.3d 264 (3d Cir. 2014).  Recognizing that it had appellate jurisdiction over the District Court's denial of the motion to compel arbitration pursuant to 28 U.S.C. § 2392 and the Federal Arbitration Act, the Third Circuit first considered

whether it should exercise pendent jurisdiction to adjudicate the standing issue after it was

already decided by the District Court.  Id. at 268–69.  It found that because the issues of standing

were discrete from the arbitration question, it would not exercise pendent appellate jurisdiction

over the standing issue.  Id. at 270.  Turning to the denial of the motion to compel arbitration, the

Third Circuit agreed with the District Court and held that Coventry could not compel arbitration

against the Plaintiffs, who never consented to the purchase agreement at issue.  Id. at 274.  In the

last footnote of the opinion, however, the Third Circuit issued some further commentary about

the class certification issues, as follows:

> Because we find that Coventry cannot compel arbitration, we need not reach the
> question of whether Appellees would be required to arbitrate their claims on an
> individual rather than a class basis.  However, because the parties request that we
> specify the answer to that question in this appeal, we will note that Appellees waived
> their class action claim on appeal, having neglected to properly brief the issue and
> having conceded as much at oral argument.  Only in the very last footnote of their
> brief do Appellees discuss the issue of class status, and only abstractly:
>
> > [T]he class plaintiff's individual standing, linked to his or asserted
> > claim, becomes automatically linked to the class claim.  Having
> > standing which a class representative shares with the members of a
> > class is another way of saying that the class representative is a proper
> > party to raise a particular issue common to the class. . . .
>
> Griswold Br. at 58.  Aside from this footnote, Appellees make no attempt to reaassert
> class status.  Because they failed to brief the issue on appeal and conceded as much
> at oral argument, they have forfeited the argument.  See John Wyeth & Bro. Ltd. v.
> CIGNA Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in
> passing (such as, in a footnote), but not squarely argued, are considered waived.").

Id. at 274 n.8.

## E.   Current Procedural History

On October 13, 2014, following remand of the case to the District Court, Defendants filed

a Motion to Strike Plaintiffs' Class Action Allegations (Docket No. 78).  The case was then

reassigned to the Undersigned, on October 22, 2014, for further proceedings.  Plaintiffs filed a

Response on October 30, 2014, Defendants submitted a Reply Brief on November 14, 2014,

Plaintiffs filed a Sur-reply Brief on November 19, 2014, and Defendants submitted a

Supplemental Memorandum on November 25, 2014.  As the parties have fully exhausted the

briefing process, this Motion is now ready for judicial consideration.

## II.     STANDARD OF REVIEW

Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order

stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or

scandalous matter."  Fed. R. Civ. P. 12(f).  Content is immaterial when it "has no essential or

important relationship to the claim for relief."  Donnelly v. Commonwealth Fin. Sys., No.

Civ.A.07-1881, 2008 WL 762085, at *4 (M.D. Pa. March 20, 2008) (citing Delaware Healthcare,

Inc. v. MCD Holding Co., 893 F. Supp. 1279, 1291–92 (D. Del.1995)).  Content is impertinent

when it does not pertain to the issues raised in the complaint.  Id. (citing Cech v. Crescent Hills

Coal Co., No. Civ.A.96-2185, at *28 (W.D. Pa. July 25, 2002)).  Scandalous material

"improperly casts a derogatory light on someone, most typically on a party to the action."  Id.

(citing Carone v. Whalen, 121 F.R.D. 231, 233 (M.D. Pa. 1988)).

"The standard for striking a complaint or a portion of it is strict, and 'only allegations that

are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be

stricken.'"  Steak Umm Co., LLC v. Steak'Em Up, Inc., No. Civ.A.09-2857, 2009 WL 3540786,

at *2 (E.D. Pa. Oct. 29, 2009) (citing Johnson v. Anhorn, 334 F. Supp. 2d 802, 809 (E.D. Pa.

2004)).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and

avoid unnecessary forays into immaterial matters."  McInerney v. Moyer Lumber and Hardware,

Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).  Although "[a] court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," such motions are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." River Road Dev. Corp. v. Carlson Corp., No. Civ.A.89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990).  Thus, striking a pleading or a portion of a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice." DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (quotations omitted).

When evaluating a defendant's motion to strike class allegations from a complaint, a court must be particularly cognizant that "'[a]n order granting a motion to strike class allegations is tantamount to a denial of class certification after a motion to certify.'" Smith v. Merial Ltd., No. Civ.A.10-439, 2012 WL 2020361, at *6 (D.N.J. June 5, 2012) (quoting 1 Joseph M. McLaughlin, McLaughlin on Class Actions § 3:4 (10th ed. 2013)).  "'[T]he burden remains with the party seeking class certification regardless of who moves the court to make the determination.'" Royal Mile Co., Inc. v. UPMC, ___ F. Supp. 2d ___, 2014 WL 4187129 (W.D. Pa. 2014) (quoting Blihovde v. St. Croix Cnty. Wis., 219 F.R.D. 607, 614 (W.D. Wis. 2003)). "Decisions from our sister courts (and courts in a number of other jurisdictions) have made clear that dismissal of class allegations at this stage should be done rarely and that the better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery.'" Ehrhart v. Synthes (USA), No. Civ.A.07-1237, 2007 WL 4591276, at *5 (D.N.J. Dec. 28, 2007) (quoting Gutierrez v. Johnson & Johnson, Inc., No. Civ.A.01-5302, 2002 WL 34717245 (D.N.J. Aug. 13, 2002) (further citations omitted)).

12

III.    DISCUSSION

Defendants now move to strike all of the class allegations in Plaintiffs' Complaint

pursuant to the mandate rule, which holds that "'[i]t is axiomatic that on remand for further

proceedings after [a] decision by an appellate court, the trial court must proceed in accordance

with the mandate and the law of the case as established on appeal.'"  U.S. v. Kennedy, 682 F.3d

244, 252–53 (3d Cir. 2012) (quoting Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943,

949 (3d Cir. 1985)).  "'A trial court must implement both the letter and spirit of the mandate,

taking into account the appellate court's opinion and the circumstances it embraces."  Id.

(quoting Bankers Trust, 761 F.2d at 949).  Citing to the Third Circuit's statements in footnote

eight of its decision in this case, as well as comments made by the Panel during oral argument,

Defendants assert that Plaintiffs have waived class status by failing to address Defendants'

contention that Plaintiffs lacked the authority to seek class-wide relief.  Plaintiffs respond that the

Third Circuit made no such ruling as to the propriety of class-wide litigation, but merely opined,

on an advisory basis, that, in the event that arbitration was ordered, Plaintiffs had waived their

right to seek class-wide arbitration.

The question now before the Court is the scope and effect of footnote eight.  Reading the

plain language of the Third Circuit's decision, the Court finds no mandate that this case proceed

only as an individual, as opposed to a class, action for several reasons.  First, footnote eight was

merely advisory in nature and, as such, is not binding on remand.  Second, even to the extent

footnote eight could be deemed a mandate, it clearly dealt only with Plaintiffs' waiver of class-

wide *arbitration*, as opposed to class-wide *litigation*.  Finally, to the extent that the propriety of

the class was raised by Plaintiffs in the standing argument, neither the District Court nor the

Third Circuit addressed standing, meaning that waiver would not apply.  This Court expands

upon each of these points below.

      **A.**     **Footnote Eight as Dicta**

     As a primary matter, footnote eight is reasonably read as nothing more than dictum.

"[D]ictum [is] 'a statement in a judicial opinion that could have been deleted without seriously

impairing the analytical foundations of the holding—that, being peripheral, may not have

received the full and careful consideration of the court that uttered it.'"  In re McDonald, 205

F.3d 606, 612 (3d Cir. 2000) (quoting Sarnoff v. Am. Home Prods. Corp., 798 F.2d 1075, 1084

(7th Cir. 1986)).  It is settled law that dictum in a decision of the court of appeals is not binding

on lower courts or on a subsequent panel of the court of appeals.  See, e.g., Kool, Mann, Coffee

& Co. v. Coffey, 300 F.3d 340, 355 (3d Cir. 2002); U.S. v. Outram, 445 F. App'x 509, 514 n.6

(3d Cir. 2011), cert. denied, 132 S. Ct. 2430 (2012).  As one court has explained:

> Though stare decisis is fundamental to our jurisprudence, and the governing power
> of precedent is absolute, not every rumination of a higher court is to be awarded
> equal weight by a lower court.  The doctrine of stare decisis focuses on the decision
> of the court and the rule the decision adopts. . . . "[A] case is important only for what
> it decides: for 'the what,' not for 'the why,' and not for 'the how.'  It is important
> only for the decision not for the detailed legal consequence following a detailed set
> of facts."  As Judge Aldersit concludes, "stare decisis means what the court did, not
> what it said."

Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, 186 F. Supp. 2d 567, 573 (E.D. Pa. 2002)

(quotations and citations omitted).  The Third Circuit has clarified that "[l]itigants should not

totally disregard dictum, of course, because it indicates the direction or framework of an opinion

writer's thought, and thereby serves as a tool for predicting what the court might do when the

issue is properly presented."  Chowdury v. Reading Hosp. & Med. Ctr., 677 F.2d 317, 324 (3d

Cir. 1982).  Nonetheless, "dictum, unlike holding, does not have the strength of a decision

'forged from actual experience by the hammer and anvil of litigation,' a fact to be considered

when assessing its utility in the context of an actual controversy.  Similarly, appellate courts must

be cautious to avoid promulgating unnecessarily broad rules of law."  Id. (quotations omitted).

The Third Circuit has been clear that

> Simply labeling a statement in an opinion as a 'holding' does not necessarily make
> it so.  Gratuitous statements in an opinion that do not implicate the adjudicative facts
> of the case's specific holding do not have the bite of precedent.  They bind neither
> coordinate nor inferior courts in the judicial hierarchy.  They are classic obiter dicta:
> "statement[s] of law in the opinion which could not logically be a major premise of
> the selected facts of the decision."

U.S. v. Warren, 338 F.3d 258, 265 (3d Cir. 2003) (quotation omitted).

In the present case, it is abundantly obvious that footnote eight is simply dictum which

does not tie this Court's hands on remand.  As set forth above, footnote eight states:

> Because we find that Coventry cannot compel arbitration, ***we need not reach the
> question of whether Appellees would be required to arbitrate their claims on an
> individual rather than a class basis***.  However, because the parties request that we
> specify the answer to that question in this appeal, we will note that Appellees waived
> their class action claim on appeal, having neglected to properly brief the issue and
> having conceded as much at oral argument.  Only in the very last footnote of their
> brief do Appellees discuss the issue of class status, and only abstractly . . .  Aside
> from this footnote, Appellees make no attempt to reaassert class status.  Because they
> failed to brief the issue on appeal and conceded as much a oral argument, they have
> forfeited the argument. . . .

Griswold, 762 F.3d at 274 n.8 (emphasis added).  In more simple terms, the Third Circuit

expressly indicated its holding that it could not grant Defendants' request to compel arbitration.

As a result, it did not need to address any further subparts of that issue, including whether, if

arbitration was compelled, Plaintiffs could arbitrate as a class as opposed to on an individual

basis.  Nonetheless, the Third Circuit "note[d]" for purposes of answering a question directly

posed by the Defendants, that the Plaintiffs waived their class action claim. Such a footnote could have easily been deleted from the opinion without impairing the analytic foundations for the holding of the opinion. Moreover, the guidance embodied in that footnote, while not irrelevant, is not binding because (1) it was divorced from the actual controversy decided, which was whether arbitration should proceed at all and whether the Third Circuit had jurisdiction to review the District Court's standing decision; and (2) it was not accompanied by any extensive reasoning that would allow the Court to assess its scope and basis.[2] As the footnote was simply a gratuitous statement that did not implicate the adjudicative facts of the case's specific holding, it does not have the bite of precedent and does not require this Court to strike the class allegations in the Complaint.

**B.      To the Extent the Footnote Is Not Dictum, It Is Limited Class-Wide Arbitration as Opposed to Class-Wide Litigation**

Even if the Third Circuit's footnote eight was entitled to any precedential weight, the Third Circuit—notwithstanding Defendants' contrary arguments—clearly and unequivocally restricted the scope of its ruling to whether Plaintiffs could pursue class-wide *arbitration*, as opposed class-wide *litigation*. As any arbitration, let alone class-wide arbitration, is no longer an issue in this case, footnote eight would not compel this Court to strike the class allegations.

This very simple interpretation finds ample support in the appellate record. Defendants raised class issues in two parts of their Appellate Brief. First, in a cursory one-and-a-half page argument—presented at the tail end of their fifteen-page standing argument—Defendants

---

[2] Defendants' multiple arguments—presented in its Reply Brief—contending that the footnote was not dictum are meritless. Because most of those arguments rely on a broader interpretation that this Court finds to be unsupported, the Court will explain in the next section of this Memorandum why such arguments are rejected.

contended that (a) Plaintiffs lacked standing to assert claims on behalf of a putative class because Plaintiffs were limited to asserting only the claims the trustee had the authority to pursue, and (b) Plaintiffs are not members of the putative class (the "class standing argument").  Second, in a lengthier, four-page argument, Defendants asserted that "should this Court hold that plaintiffs have standing but that their claims must be sent to arbitration, it should make clear that plaintiffs are required to arbitrate their claims on an individual, not class, basis" (the "class arbitration argument").  (Pls.' Resp. Opp'n Mot. to Strike, Ex. 3, at 56.)  Plaintiffs did not address the class issues in their Response Brief, but for a short and nonspecific footnote towards the end.  Despite Plaintiffs' lack of responsive argument, Defendants' Reply Brief did not allege that Plaintiffs had now waived their right on appeal to assert class standing, but rather reasserted only that the District Court should have dismissed the claims on behalf of the putative class on standing grounds.  As to the class arbitration argument, however, Defendants expressly asserted waiver, as follows: "[i]f this Court agrees that arbitration is warranted, it should order arbitration to proceed on an individual, not class, basis. . . . Plaintiffs did not contest that issue below, nor do they contest it here.  They have therefore forfeited any argument that class arbitration is appropriate." (Pls.' Resp. Opp'n Mot. to Strike, Ex. 4, at 29.)

At oral argument, it became abundantly clear that the only real class issue under consideration was the issue of class *arbitration* and whether Plaintiffs had waived that issue.  In its opening argument, Defendants' counsel did not mention class litigation in the context of its standing argument, nor did he suggest that the issue was waived.  Towards the end of his argument regarding arbitration, however, counsel stated, "I want to say just one word on the issue of class certification," only to be halted by the Judges who wanted to address the issue on rebuttal

after they questioned Plaintiffs' counsel.  (Pls.' Resp. Opp'n Mot. to Strike, Ex. 5, at 35.)

Plaintiffs' counsel then began argument and, when addressing the arbitration issue, was stopped by Judge Hardiman who asked whether or not the case could be construed as a class action anymore since Plaintiffs had not addressed that issue in their appellee brief.  (Id. at 43.) Reasonably understanding this question to relate solely to the arbitration question, Plaintiff's counsel stated, "I don't believe that we responded on that basis.  I think our principle response was that this case is not subject to arbitration at all.  I don't think we addressed the need to whether this should be class or individual arbitration because we believed then, as we believe now, that we have strong arguments why it's not arbitrable."  (Id. at 44.)  Plaintiffs' counsel then proceeded through his standing argument without any questioning as to whether Plaintiffs had standing to represent a class or whether Plaintiffs had waived that argument.   Again, towards the end of his argument, Plaintiffs' counsel returned to the arbitration issue, only to again be met with an inquiry from Judge Ambro as to whether Plaintiffs' answering brief responded to Defendants' argument "that assuming—even if they have standing, and you must arbitrate, that you can only do so on an individualized basis and not on class basis?"  (Id. at 59.)  In other words, Judge Ambro's question reflected a very focused concern only on class *arbitration*. When Plaintiffs' counsel indicated that his brief had not addressed the issue in great detail, Judge Ambro remarked: "Here's my problem.  They put ***that*** issue before us as one of the issue s on appeal.  They briefed ***that*** issue.  I don't see it—a response in the answering brief to that issue, even if it's the point you're now making."  (Id. at 60 (emphasis added).)

Thereafter, Defendants' counsel was given an opportunity for rebuttal argument, during which time he made it abundantly clear that the class issue that Defendants briefed and

presented—and the class issue he believed to be waived by Plaintiffs—was the question of

whether Plaintiffs would be entitled to arbitrate on a class-wide basis if arbitration was ordered,

as follows:

> First of all, to take these points in reverse order and to start with *the issue of class arbitration*. I would respectfully submit that it could not be clearer that *any argument that plaintiffs are entitled to arbitrate on a class-wide basis has been forfeited.* We addressed the issue of *class arbitration* at length before the District Court and we cite the relevant pages in our opening brief. And of course, as Judge Ambro pointed out, we addressed that issue at length before this Court as well.
>
> And, nevertheless, plaintiffs offer no response, none, in their brief, on *the issue of whether class arbitration is appropriate* here.
>
> And I would respectfully submit that that is for good reason, because this is not simply a circumstance in which there is *nothing in the arbitration provision that suggests a willingness to arbitrate on a class[] basis*. As we note in our brief, both sides to the purchase agreement, both the trustee, Wells Fargo, who has not attempted to commence any litigation, but nevertheless submitted a declaration in this case, and Coventry submitted declarations, both of which assert that both of *the parties did not agree to class arbitration* and that the parties did not agree to have an arbitrator make that determination.
>
> And so, we would respectfully submit that even if this Court were minded to reach the merits of that issue, this is an easy case in which the arbitration provision, at most, permits individual arbitration.

(Id. at 64–65 (emphasis added).)  Immediately following that argument, Judge Ambro

questioned, "And isn't that really the biggest thing that you're concerned about?" (Id. at 65.)

Defendants' counsel responded—giving abundant clarity to the issue—that "[w]e're certainly

very concerned about that because of *the perils of class-wide arbitration*. And so, at a

minimum, if this Court resolves this case in our favor on the arbitration issue, *we think that this

Court should make clear that on remand, the District Court should compel arbitration on an

individual basis.*" (Id. (emphasis added).)  He went on to indicate that he was *not* seeking a

ruling on Plaintiffs' entitlement to class litigation at that juncture, remarking that, "And if the case stays in the court, then presumably plaintiffs would seek class certification and, of course, we **would** oppose that and we **would** note at the outset that precisely because the trust is not before the Court, this is a case in which you don't even have a class member as the plaintiff. And so, we certainly would think that class certification would be inappropriate." (Id. at 66 (emphasis added).) Notably, in so arguing, Defendants' counsel never suggested that Plaintiffs had waived their right to seek class litigation and effectively conceded that, if arbitration was not mandated, class certification *would* properly be decided by the District Court.[3]

---

[3] Defendants latch on to isolated comments from Judge Hardiman, wherein he stated, "as I read this, this is not a class action anymore.  It might have been at one time, but this is not any longer.  This is a dispute between these plaintiffs and these defendants, is it not." (Pls.' Resp. Opp'n Mot. to Strike, Ex. 5, at 43.)  When Plaintiffs' counsel responded that the class question remained to be seen after discovery and a class certification motion was filed, Judge Hardiman remarked, "No, but what is at issue is whether that issue was forfeited.  And opposing counsel has argued that you didn't meet that challenge in the District Court, and I don't see anything to undermine that argument." (Id. at 44.)  Plaintiffs' counsel clarified that their position was that the case was not subject to *arbitration* at all, so Plaintiffs did not respond as to whether the case was subject to *class arbitration*. (Id.)  Counsel went on to note that if there is going to be a case, Plaintiffs would have to decide whether there would be an individual case or a class case. (Id. at 46.)  In response to that argument, Judge Hardiman ruminated, "Well, but I'm not sure how we can just—we can just postpone that decision, because part of the dispute here involves who the actual parties are, who were the parties to the agreement, and who were the parties to this litigation." (Id.)  Based on this exchange, Defendants now argue that the Third Circuit's waiver ruling was not limited to the issue of class arbitration, but rather extended to Plaintiffs ability to represent a class *in litigation.*

While artfully argued, Defendants' position is simply incorrect.  It is a common practice for appellate judges to ask questions and play the "devil's advocate" at oral argument with the intention of testing the waters of a party's position, even though the inquiring judge may eventually agree with the party with whom he or she is debating.  Although Judge Hardiman voiced his concerns about whether class litigation as a whole was waived, he apparently became satisfied that the waiver issue extended only to class *arbitration*.  This was made obvious by the fact that any future waiver discussions occurred only in the context of the arbitration issue and by Defendants' counsel's concessions that he was only arguing waiver for purposes of class arbitration.  Moreover, to the extent Judge Hardiman had any lingering concerns about class issues with respect to standing, they were mooted by the panel's decision that it did not have

Guided by both the parties' briefing and the oral arguments, the Third Circuit issued a ruling that reflected the parties' concerns.  In the initial part of its opinion, the Third Circuit declined to exercise its pendent jurisdiction to consider the standing issue as a whole.  Thereafter, it turned to the substantive issue of whether the case should be ordered to proceed to arbitration. The Court concluded its extensive analysis of this issue with the statement that, "[t]herefore, Coventry cannot compel arbitration against Appellees, who never consented to the purchase agreement."  Griswold, 762 F.3d at 274.  Appended to that sentence was footnote eight, which, by virtue of its position in the opinion, clearly sought to clarify only the sentence to which it was attached.  At the outset of the footnote, the Third Circuit stated: "Because we find  that Coventry cannot compel arbitration, we need not reach the question of whether Appellees would be required to arbitrate their claims on an individual rather than a class basis."  Id. at 275 n.8.  It then went on to note that "[h]owever, because the parties request that we specify the answer to *that* question in this appeal, we will note that Appellees waived their class action claim on appeal, having neglected to properly brief the issue and having conceded as much at oral argument."  Id. (emphasis added).  Under basic principles of grammar, "that question" to which the Third Circuit gave an answer was precisely the one preceding the phrase: "whether Appellees

---

jurisdiction to consider the standing issue.  Finally, when Judge Hardiman authored footnote eight, he very purposely annexed it to the discussion involving arbitration and not to either the standing section or the conclusion.  In addition, he made clear that the question being answered in footnote eight was "whether Appellees would be required to arbitrate their claims on an individual rather than a class basis" and that he was finding that Plaintiffs waived their right to arbitrate on a class basis.  Griswold, 762 F.3d at 274 n.8.  Given the overall record, the Court declines to give undue weight to Judge Hardiman's comments on oral argument that were not otherwise reflected in the four corners of the Court's final opinion.

would be required to arbitrate their claims on an individual basis."[4]  Nothing in this plain language suggests—as Defendants urge—that it answers the much broader question of whether Plaintiffs could *litigate* their claims as a class.   Given that Defendants made clear, during oral argument, that they wanted an answer to precisely this question, the only reasonable interpretation of footnote eight is that it addressed *only* the viability of class arbitration if arbitration were to be ordered.

**C.     To the Extent the Issue of Class Litigation Was Before the Court as Part of the Standing Issue, the Third Circuit Clearly Declined to Address It**

Even assuming that the class issue came before the Third Circuit under the guise of the standing argument, this Court does not find that any ruling by the Third Circuit now forecloses class litigation.  A brief review of the development of this argument throughout the procedural history of this case clarifies this conclusion.

In the District Court, Defendants submitted a Motion to Dismiss or Compel Arbitration that argued, by way of a seventy-page brief, that Plaintiffs lacked standing to pursue their claims and, if they were found to have standing, they should be compelled to go to arbitration.  Via only

---

[4] Defendants argue that the Plaintiffs' footnote—quoted by the Third Circuit within its own footnote eight—addressed Plaintiffs' standing for purposes of class litigation.  Defendants go on to assert that "[i]t would make no sense for the Third Circuit to address Plaintiff's [sic] purported arguments in favor of class action status in *litigation* if either the Third Circuit was addressing only the narrow question of class *arbitration* or its answer was confined to class *arbitration*."  (Defs.' Reply Br. 4.)

The Court's citation to Plaintiffs' footnote, however, clearly evidences that the Court was limiting its decision to class arbitration.  It remarked that "[o]nly in the very last footnote of their brief do Appellees discuss the issue of class status, and only abstractly."  Griswold, 762 F.3d at 274 n.8.  In other words, the Court specifically observed that Plaintiffs made only a broad and "abstract" claim to class status, without directly addressing the specific issue raised and argued on appeal: whether Plaintiffs were entitled to class arbitration in the event that arbitration was ordered.

two short paragraphs, Defendants challenged Plaintiffs'—both Griswold individually and the

Family LLP—standing to represent the class, as follows:

> Finally, Mr. Griswold lacks standing to represent the proposed putative class, as he is not a member of the class.  The proposed putative class is defined as "[a]ll persons or entities, as either an owner or the insured, who transferred a life insurance policy to Defendants within the last 10 years of filing this action. . . ." . . . As Plaintiffs acknowledge, Mr. Griswold did not own the Policy. . . . And, although Mr. Griswold was the insured, he admits that he did not transfer the Policy to Defendants; the Trust did. . . .
>
> . . .
>
> Third, even if the Family LLP had distinct claims, it would not be part of, and thus could not represent, the putative class.  Plaintiffs define the putative class as "[a]ll persons or entities as either an owner or the insured, who transferred a life insurance policy to Defendants within the last 10 years of filing this action. . . ." . . .  But Plaintiffs admit the Family LLP did not own the Policy, was not the insured, and did not sell or transfer the Policy to Coventry First. . . .

(Defs.' Mot. to Dismiss or Compel Arbitration, Griswold v. Coventry, No. Civ.A.10-5964, 15,

31 (Feb. 1, 2011) (citations to record and to cases omitted).)  Perhaps cognizant of the general

reluctance to dismiss class allegations at the outset of a case prior to discovery and class

certification briefing, and perhaps aware that no Rule 23 analysis was before the Court, Plaintiffs

did not address these cursory arguments in their eighty-page response, but rather focused on the

broader issues of standing in general.   Defendants did not re-raise any such issue in their Reply

Brief.

In its ensuing ruling, the District Court found that Plaintiffs unequivocally had standing to

pursue this claim.  Specifically, the District Court determined that " Because Lincoln T. Griswold

possesses a proprietary interest in the property of the Griswold LLP that was injured, both

Lincoln T. Griswold and the LLP have Article III standing to pursue claims against Defendants. .

. . Additionally, Lincoln T. Griswold, as a signatory to the Appointment Agreement also has standing to pursue the claims in his individual capacity for harm caused by Defendants' alleged conduct." (Order, Griswold v. Coventry, No. Civ.A.10-5964 (E.D. Pa. Feb. 27, 2013).) Having found that Plaintiffs had standing to pursue the individual claims, the Court properly did not consider the premature Rule 23(a) question[5] of whether Plaintiffs were adequate class representatives for the putative class claim.

Thereafter, on appeal, Defendants re-raised a contention that Plaintiffs lacked standing to assert claims on behalf of a putative class, either because the trustee did not have authority under the trust agreement to pursue a putative class action, or because Plaintiffs were not members of that class. (Pls.' Resp. Opp'n Mot. to Strike, Ex. 3, at 35.) Subsequently, during oral argument, after Plaintiffs' counsel stated that class litigation needed to be decided at a later date, Judge Hardiman raised the concern of whether such an issue could be delayed, stating "[w]ell, but I'm

---

[5]  Indeed, the standing inquiry does not tie directly to the adequacy of representative inquiry under Fed. R. Civ. P. 23(a).  The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent."  Beck v. Maximus, Inc., 457 F.3d 291, 296 (3d Cir. 2006) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997)).  It "'assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class.'"  Id. (quoting Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994)).  Thus, the Court must determine "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class."  Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 185 (3d Cir. 2001).  "Adequacy of representation depends on the circumstances surrounding each case."  Behrend v. Comcast Corp., 245 F.R.D. 195, 204 (E.D. Pa. 2007) (citing Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975)). The burden is on the defendant to prove that the representative plaintiffs will not adequately represent the class.  Id.
  Whether or not a plaintiff has standing to bring a particular action does not clearly answer the adequacy of representation question.  Accordingly, Defendants' conflation of the two inquiries under the guise of "standing" did not properly raise the question of adequacy for purposes of a class certification analysis.

not sure how we can just—we can postpone that decision, because part of the dispute here involves who the actual parties are, who were the parties to the agreement, and who were the parties to this litigation.  And my understanding is that neither Griswold, LLP, nor Mr. Griswold owned the policy when it was transferred to Coventry . . .  So, how could they possibly have standing to act on behalf of a class of such transferors?"  (Pls.' Resp. Opp'n Mot. to Strike, Ex. 5, at 46–47.)

Notwithstanding this concern, the written opinion issued by the Third Circuit made it abundantly clear that the judges affirmatively opted to postpone this decision.  Indeed, the opinion emphasized that the Third Circuit was declining to exercise pendent jurisdiction over the standing question because the standing question and arbitration questions were "discrete and neither issue's determination is dependent upon the other."  Griswold, 762 F.3d at 270.  By holding that the two issues were completely distinct, the Third Circuit unequivocally held that anything further that it said had no bearing on the standing question, including the question of whether Plaintiffs had standing to pursue—or had waived the issue of standing to pursue—class litigation.  Stated differently, by the very nature of finding that it had no jurisdiction over the standing question, the Third Circuit expressed its unambiguous intent to not issue any precedential statement regarding whether Plaintiffs had waived their right to pursue class litigation.

Defendants argue that the standing decision and the waiver decision are completely reconcilable.  They reason that "although the court declined to exercise pendent jurisdiction over the question of whether Plaintiffs had standing to pursue claims in their *individual* capacit[ies], it never had to reach the question of whether to exercise pendent jurisdiction over Plaintiffs'

waived class claim.  Accordingly, the Third Circuit's mandate on remand is clear:  Plaintiffs'

[sic] may proceed (for now) on their individual claims, but they can no longer assert any claim on

behalf of a class."  (Defs.' Reply Br. 11 (emphasis in original).)

A plain reading of the Third Circuit's decision, however, completely undermines this

argument.  The Third Circuit declined to consider standing altogether, finding that the issue was

not inextricably intertwined with the arbitration issue.  At no point did the Court restrict its

standing ruling to questions of standing to bring individual claims.  Moreover, at no point did the

Court suggest that, had it considered standing to assert a class claim, it would have reached a

different decision and exercised pendent jurisdiction.  Subsequently, in its opinion, the Third

Circuit turned to the question of arbitrability and, *only in connection with that discussion*, did it

touch on the waiver of the class issues.  Indeed, in footnote eight, the Court stated that "[b]ecause

we find that Coventry cannot compel arbitration, we need not reach the question of whether

Appellees would be required to arbitrate their claims on an individual rather than a class basis.

However, because the parties request that we specify the answer to that question in this appeal,

we will note that Appellees waived their class action claim on appeal, having neglected to

properly brief the issue and having conceded as much at oral argument."  Griswold, 762 F.3d at

274 n.8.  Had the Court meant to rule on the question of standing to bring a class claim, it would

not have needed preface its footnote with the first sentence.

In short, although Defendants cursorily raised issues of Plaintiffs' standing to pursue class

claims, those issues were never adjudicated by any court.  The District Court completely ignored

Defendants' brief contentions as to class standing and ruled only upon the individual standing

questions.  The Third Circuit found that all questions of standing—without limitation—were not

within its pendent jurisdiction and could not be decided.  Accordingly, this Court declines to find that the Third Circuit ever considered—let alone deemed waived—Plaintiffs' standing to pursue class litigation.

## III.    CONCLUSION

Ultimately, this Court concludes that the Third Circuit did not issue any mandate that all class claims in this case have been waived.  As a primary matter, the Third Circuit clearly stated that, given its holding, it did not need to opine on the issue of waiver, but was doing so only at the request of Defendants.  To that end, footnote eight is simply dictum that is not entitled to precedential weight.  Moreover, to the extent the Third Circuit expressly ruled that Plaintiffs' failure to brief the class issues resulted in a waiver, its ruling only went to matters of class *arbitration* rather than class *litigation*.  Indeed, given (1) the multiple statements made during the oral argument; (2) the placement of the footnote in the arbitration discussion of the opinion; and (3) the Third Circuit's unequivocal statement in the opinion that it was answering the singular question of "whether [Plaintiffs] would be required to arbitrate their claims on an individual rather than a class basis," no other interpretation is viable or reasonable.  Finally, any suggestion that the Third Circuit also ruled upon Defendants' claim that Plaintiffs do not have standing to represent a class is foreclosed by the Third Circuit's broad and unqualified finding that it did not have jurisdiction to consider the standing issue at all.  For all of these reasons, this Court will allow the class claims to proceed past the pleading stage and will consider issues of the propriety of a class action upon properly-filed and briefed motions under Federal Rule of Civil Procedure 23.  Accordingly, Defendants' Motion to Strike is denied in its entirety.